### BRIMIE v. UNITED STATES (two cases).

(Circuit Court of Appeals, Seventh Circuit, November 6, 1912.)

#### Nos. 1,788, 1,789.

CRIMINAL LAW (§ 878*)—JOINT INDICTMENT—VERDICT—EVIDENCE.

　　Where an indictment against two defendants charged in several counts several joint violations of the oleomargarine act (Act Aug. 2, 1886, c. 840, 24 Stat. 209 [U. S. Comp. St. 1901, p. 2228]), and the evidence, except as to two of the counts, showed only separate offenses, and but one joint verdict was rendered, a conviction could not be sustained, except as to the two counts with reference to which the evidence justified a finding of a joint offense.

　　[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2098–2101; Dec. Dig. § 878.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Knute K. Brimie and Peter K. Brimie were convicted of joint violation of the oleomargarine act under several counts, and they bring error. Reversed, with instructions.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Plaintiffs in error, hereinafter termed defendants, who are brothers, dealers in oleomargarine at wholesale, were indicted for violations of sections 4, 6, 13, and 17 of the oleomargarine act (Act Aug. 2, 1886, c. 840, 24 Stat. 209, 211, 212 [U. S. Comp. St. 1901, pp. 2229, 2230, 2232, 2234]). The indictment contained 22 counts. Briefly stated, count 4 charges that the defendants added to and mixed with the oleomargarine sold by them artificial coloration which caused it to look like butter, without having paid the tax required by the statute of manufacturers. Counts 5 and 6 charge defendants with producing and furnishing for consumption of others oleomargarine without paying the tax of ten cents a pound required by the statute. Counts 10, 11, 12, 13, 14, 16, 17, and 22 allege that defendants produced and packed oleomargarine in tubs, using stamps which had been used before. Counts 1, 2, 3, 7, 8, 9, 18, 19, 20, and 21 charge that defendants had in their possession oleomargarine in stamped tubs, which they had emptied without destroying the stamps or reused said empty tubs for packing oleomargarine. Count 15 was nolled. Defendants pleaded not guilty, and on trial had were jointly convicted upon all of said remaining counts.

From the evidence it appeared that Peter K. Brimie owned and operated four stores for the sale of oleomargarine, butter, and other provisions in the city of Chicago, to wit, 1041 Milwaukee avenue, 2710 West North avenue, 1342 Noble street, and 1362 South Halsted street, and that K. K. Brimie owned and operated two stores in said Chicago, viz., 2062 Milwaukee avenue, and 1742 West Eighteenth street. Neither had any interest in or control over any one of the stores of the other. They were not partners in any of the transactions named, and for the purpose of this hearing should be treated as independent dealers. Both resided over K. K. Brimie's store at 2062 Milwaukee avenue. The government's witness, Frank F. Strong, of the revenue service, testified that "P. K. Brimie occupied that second floor and K. K. Brimie boarded with him. P. K. Brimie had a family living with him. I looked through that flat. In a small room off the dining room I found empty packages with tax-paid stamps intact on them, 10 cents a pound. I mean empty packages that had contained colored oleomargarine." These tubs were introduced in evidence as Government's Exhibits 5 and 6. "They were," he continues, "on the floor in a small room just inside the door. The door was closed and I opened it. The tub next to it was also in the room. There were also shelves, dishes, and groceries. It looked like a regular pantry, a storeroom. * * * I found the other tub, marked for identification 'Government Exhibit 6.' It was alongside these two on the floor. All three were in the closet on the floor. This was upstairs on the second floor in the small room off the dining room. * * * I found some coloring matter (Exhibit 7 for identification). Those are the bottles which I found there. * * * They were on the first shelf just across the passageway from these tubs upstairs. They were in the same room with these tubs."

Gunda Gilbertson, called by the government, testified she was a clerk at 2062 Milwaukee avenue. She says: "I never left any oleomargarine in the tubs, except once in a while Mrs. Brimie would take a couple of pounds upstairs for cooking or something, or take the tub with her, and then she would destroy the stamp—destroy the tub. * * * P. K. Brimie and K. K. Brimie lived upstairs."

When the government rested, counsel for K. K. Brimie moved that the court direct a verdict as to his client upon counts 4 to 22, both inclusive; counts 1, 2, and 3, being those which covered the transactions at the flat over 2062 Milwaukee avenue. This motion the court denied.

Gunda Gilbertson, recalled by defendant, was then examined, and stated, among other matters: "Off and on I took some of the colored upstairs. Once in a while she would take some tubs upstairs for kindling. If the tubs were standing on the floor and I happened to be busy, she (Mrs. Brimie) would take them upstairs before I had a chance to scratch them; don't suppose she knew which (colored or white) she was taking. * * * Saw her cook up there with this butterine. She did a good deal of baking and cooking. There were quite a few up there. I saw her use some of the tubs for kindling upstairs. She cooked with butterine, and the butterine found up there was

for cooking purposes. * * * She used the colored for cooking and baking—the expensive butterine."

Defendant K. K. Brimie, being called for himself, testified: "I live at 2062 Milwaukee avenue. * * * Myself, P. K. Brimie, and his family and two children live there, and I had a party named McLain boarding with me at that time. There were usually five or six. Mrs. Brimie cooked with butterine, sometimes colored, sometimes white, it all depended how she happened to catch it in the place. * * * The tubs we would use for kindling wood occasionally, or sell them. Got four or five cents for them. Oleomargarine was used on the table by my family. * * * Lived upstairs at 2062. These bottles (coloring), introduced in evidence here, I used to see upstairs. Don't know anything else about them. I used to have them here occasionally myself. * * * Occasionally I would get the coloring matter from there two weeks, when they delivered the goods. I brought it in my pocket, and went upstairs, and put it down sometimes. * * * I didn't always keep it upstairs. I keep coloring matter downstairs, too. Q. How did these get empty upstairs? A. Well, sometimes they fall down on my—the cork went out. Q. Five of these were found empty; five of them fell down, and the corks fell out; is that right? A. Some of them. I don't recollect the bottles, because I don't pay any attention to those things."

The foregoing is all the evidence which tends to show a joint violation of the oleomargarine statute by the two Brimies.

Amos W. Marston and Daniel J. Ward, both of Chicago, Ill., for plaintiffs in error.

James H. Wilkerson and Henry W. Freeman, both of Chicago, Ill., for the United States.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). With the exception of counts 1 and 2, the indictment, charging joint offenses, and the verdict, finding the defendants jointly guilty, are not supported by any evidence of acts committed by the defendants jointly or by one with the assistance or knowledge or acquiescence of the other. Peter K. Brimie owned and controlled four stores. K. K. Brimie owned and controlled two stores. There was no evidence whatever to show that either had any interest in or control over the stores of the other, or that either participated in or knew of the alleged unlawful acts at the stores of the other. Therefore the evidence presented cases of distinct and separate offenses committed at distinct and separate times and places by distinct and separate offenders. Will this evidence support a joint verdict upon a joint indictment?

If this indictment had been against one defendant alone, the various counts charging offenses against different sections of the oleomargarine act committed at different times and places, each offense to be sustained by its own evidence, might properly have been joined in one indictment by virtue of section 1024 of the Revised Statutes (U. S. Comp. St. 1901, p. 720), which reads as follows:

"When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

In McElroy v. U. S., 164 U. S. 76, 17 Sup. Ct. 31, 41 L. Ed. 355, four indictments were consolidated. This produced in legal effect a situation the same as if all of the counts in the four indictments had been returned as counts of one indictment. Among other things the court said:

"In cases of felony, the multiplication of distinct charges has been considered so objectionable as tending to confound the accused in his defense, or to prejudice him as to his challenges, in the matter of being held out to be habitually criminal, in the distraction of the attention of the jury, or otherwise, that it is the settled rule in England and in many of our states, to confine the indictment to one distinct offense or restrict the evidence to one transaction. * * * It is clear that the statute does not authorize the consolidation of indictments in such a way that some of the defendants may be tried at the same time with other defendants charged with a crime different from that for which all are tried. · And even if the defendants are the same in all the indictments consolidated, we do not think the statute authorizes the joinder of distinct felonies, not provable by the same evidence and in no sense resulting from the same series of acts."

See, also, Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208; United States v. Dietrich (C. C.) 126 Fed. 664; Elliott v. State, 26 Ala. 78; Lindsey v. State, 48 Ala. 169; McGehee v. State, 58 Ala. 360; State v. Daubert, 42 Mo. 242 (cited in McElroy v. United States, supra); Stephens v. State, 14 Ohio, 386.

If but one person is indicted for one transaction, no possible confusion can arise. If one person is indicted for several transactions of the same nature, any confusion or difficulty that the jury may have in applying the evidence to the separate counts does not jeopardize the safety of any person except the sole defendant. If several defendants are indicted jointly for one transaction—even though the indictment may now be treated as charging joint and several offenses (Commonwealth v. Griffin, 3 Cush. [Mass.] 523; State v. Winstandley, 151 Ind. 316, 51 N. E. 92), differing in that respect from the old common-law practice which required the indictment to lay the offense "separaliter" if evidence against one defendant alone was to be admitted—no harm would be done to that defendant who, the evidence showed, had not participated in the one transaction under consideration, because the situation would be met by a nolle as to that defendant, and the other defendant, being advised by the indictment that evidence against him alone might be admitted, would not be prejudiced, for the reason that the jury would have before it for consideration only the evidence against him relating to his own acts. But if ten defendants were jointly indicted for ten transactions, and if the indictment was treated as charging each with having committed separately each offense as well as charging them with having jointly committed all of the offenses, and if the evidence should show that the first defendant was alone concerned in the first transaction, and that the second defendant was alone concerned in the second transaction, which occurred at a separate time and place from the first transaction, and so on, then the result would be that what constituted ten separate offenses committed by ten separate defendants was being treated as one case with all of the prejudices to nine defendants in each instance which are stated in the McElroy Case, supra. It might be that, no matter how apparent it was on the record

that confusion and injustice had resulted, no relief could be given if the defendants had failed to move for separate trials, if several verdicts were ultimately returned against them, for. the reason that the indictment being treated as charging several as well as joint offenses would advise them that evidence of several rather than joint offenses might be admitted and on such evidence several verdicts instead of one joint verdict returned. But in the present case there were no several verdicts—just the one joint verdict. So, while it is possible that the defendants might not have been able to obtain any relief if there had been several verdicts in the present case (a question we do not pass upon), yet in the present case the indictment must be treated as joint, because the jury so treated it in returning a joint verdict, and cannot be viewed as a several indictment, for the reason that the jury declined to act upon it in that aspect. And manifestly, under the facts as heretofore stated showing only separate offenses, the joint verdict cannot be sustained.

Counts 1 and 2 are based upon the transactions in the flat at No. 2062 Milwaukee avenue. Defendants claim that there is no evidence on which the jury were justified in finding that they had joint possession and control of those premises and were jointly concerned in the transactions. It is true that the government's witness, Strong, testified that P. K. Brimie occupied that second floor and that K. K. Brimie boarded with him; but he details no primary facts on which he based that conclusion. On the other hand, the testimony of the witness Gunda Gilbertson might indicate a joint participancy in the possession and control of the premises and in the doings complained of. And the testimony of the defendant K. K. Brimie, referring to parties boarding with him and the use of oleomargarine at the table by his family, together with his use of the pantry, while not showing the exact terms on which the establishment was conducted, might fairly support the finding that the possession was joint. So we think it was open for the jury to determine that Mr. Strong made his statement without a knowledge of the facts and that the real facts were a joint possession and a joint offense at that place.

The judgment is accordingly reversed as to both defendants, with the direction to grant a new trial as to all of the counts except 1 and 2, and to enter judgment and sentence according to law upon those counts.