## HARRISON et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 274.

**1. Conspiracy ⬅47—Evidence of conspiracy to violate Drug Act sufficient to sustain conviction.**

In prosecution for conspiring to sell cocaine without complying with provisions of the Harrison Act (Comp. St. §§ 6287g–6287q), evidence *held* sufficient to sustain conviction.

**2. Poisons ⬅9—Accused held accessory.**

In prosecution for selling cocaine in violation of Harrison Act, §§ 1, 2 (Comp. St. §§ 6287g, 6287h), admission of accused that he had allowed his office to be used for sale *held* sufficient to show him an accessory.

**3. Poisons ⬅9 — Evidence held sufficient to sustain conviction.**

In prosecution for sale of cocaine in violation of Harrison Act, §§ 1, 2 (Comp. St. §§ 6287g, 6287h), evidence that accused told possessor of cocaine that he could get him a man to sell it, and accompanied owner to office where he delivered samples subsequently used in negotiation for sale, *held* sufficient to sustain conviction.

**4. Criminal law ⬅878(2) — General verdict held good on all counts.**

In prosecution on three counts—first, for selling cocaine without registering sellers under Harrison Act, § 1 (Comp. St. § 6287g); second for selling same cocaine to buyer who did not

present written order required by section 2 (section 6287h); and, third, for conspiring to sell without complying with act—general verdict *held* good on all counts, especially where no objection was taken to its entry.

**5. Conspiracy ⬦38 — Nolle prosequi against one of six defendants held not to void conviction.**

In prosecution against six defendants for conspiracy to sell cocaine, in violation of Harrison Act (Comp. St. §§ 6287g–6287q), nolle prosequi against one of defendants *held* not to avoid conviction of other five; it being no variance to allege conspiracy of six and prove one of five.

**6. Criminal law ⬦1038(1)—Error charging jury too broadly cannot be corrected in absence of objection at time.**

Error in charging jury to convict if they believed government's witnesses cannot be corrected in absence of objection taken at time.

**7. Criminal law ⬦1036(1)—Error in admitting statements of conspirator pleading guilty not available in absence of objection.**

Although statements of a conspirator who has pleaded guilty are inadmissible in prosecution against others, error in their reception is waived by failure to make specific objection.

**8. Criminal law ⬦1156(1)—Refusal of trial court to entertain motion for new trial reviewable.**

Although decision of trial court on motion for new trial is not reviewable, refusal to entertain such a motion, being deprivation of a right, is reviewable.

**9. Criminal law ⬦942(2)—Recantation of one joint defendant to testimony at trial may be grounds for new trial.**

Where, after conviction for selling cocaine and for conspiracy in violation of Harrison Act (Comp. St. §§ 6287g–6287q), one of joint defendants recanted as to testimony tending to connect another with crime, his recantation may be a ground for a new trial of the defendant affected by that testimony.

**10. Criminal law ⬦1186(7)—On reversal of judgment for refusal to entertain motion for new trial after verdict, verdict will not be disturbed.**

In prosecution where there is no error in trial up to verdict, but court refuses to entertain motion for new trial, on grounds which would support such motion, judgment will be reversed, and verdict let stand, so that, if motion is denied, a new sentence may be imposed on the verdict.

**11. Criminal law ⬦1088(6)—Motion for new trial and order on it are not part of record, except as incorporated into bill of exceptions; "record before the court."**

A motion for new trial and order thereon after judgment are not a part of the record, but may be included in bill of exceptions and reviewed under authority of Jud. Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246); "record before the court"

as used in statute being broader than record as known in common law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Record.]

**12. Criminal law ⬦1216(2) — Cumulation of sentences for counts for alternative forms of violation of Harrison Act not proper.**

In prosecution under three counts, for selling cocaine in violation of Harrison Act, §§ 1, 2 (Comp. St. §§ 6287g, 6287h), and for conspiring to sell cocaine without complying with act, the offense in substance being single, the cumulation of sentences, though regular, is rarely to be approved.

In Error to the District Court of the United States for the Southern District of New York.

John Harrison, George Murphy, and another were convicted of violating and conspiring to violate the Harrison Narcotic Act, and the defendants named bring error. Affirmed in part, and in part reversed and remanded.

Writ of error to a judgment of conviction against the plaintiffs in error upon an indictment under three counts: The first count was for selling cocaine without registering the sellers under section 1 of the Harrison Act (Comp. St. § 6287g); the second was for selling the same cocaine to a buyer who did not present the written order required by section 2 (section 6287h); the third was for conspiring to sell cocaine without complying with the provisions of the act.

John B. Johnston, of New York City (Anthony J. Ernest, of New York City, of counsel), for plaintiffs in error.

Emory R. Buckner, U. S. Atty., of New York City (William Berg, Asst. U. S. Atty., of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HAND, Circuit Judge.   Six defendants were indicted.   All pleaded not guilty but eventually two changed these pleas, Turner and De Meglio, and pleaded guilty.   A nolle prosequi was entered against another, Smith. The other three, Rush, Harrison, and Murphy, were brought to trial and convicted under all three counts.   Rush took no writ of error, and the case comes up upon that of Harrison and Murphy alone.

The evidence allowed the jury to find the following facts: Smith was in possession of large quantities of cocaine, which he wished to dispose of unlawfully. He called up Turner, an iron worker, whom he had known for

some years, and asked him to visit him at his place of business. Turner went and received 3,000 vials of cocaine for sale, which he later gave to De Meglio to keep for him. Shortly thereafter Turner met Murphy and asked him if he could sell any of the vials, telling him that he thought they were cocaine. Murphy answered that he believed that he had a man to sell them. Later Murphy and Turner went to Harrison with two samples which Murphy gave to him. Turner gave other samples to Murphy, on which Murphy tried to make a sale, but the samples were turned back to him as unsatisfactory. Turner told De Meglio to bring 500 vials to Harrison's office and to meet him there. When De Meglio arrived, Turner was not there, and he left the vials in Harrison's office, telling him that he had a package for Turner which he was to leave, to which Harrison assented. The sale of these 500 vials was made by Rush to Percetta, a government agent, through the intermediation of Velke, an informer. Rush was arrested, and later Turner, Harrison, Murphy, and De Meglio.

[1] The complicity of all the defendants in a conspiracy to sell cocaine unlawfully is so abundantly shown that it seems to us idle to go over the evidence in detail. What weight the jury attached to the testimony is of course beyond our review. Since the defendants were sentenced cumulatively to four years on each of the sale counts and to two years on the conspiracy counts, it is, however, of great importance to them to inquire whether they were also implicated in the sale of Rush to Percetta.

[2] The proof as to Harrison was clear enough. He indeed admitted that he had allowed his office to be used for the sale, which alone would make him an accessory. But the proof went much further than that, since it was to him that Murphy gave the sample which Rush must have used in the sale of Percetta. Turner knew Rush but had not seen him in this connection; nor had Murphy so far as appeared. Again Rush swore that he got the samples from Harrison, that Harrison agreed to the terms of the sale, and that he got the vials for him. It does not appear how he could have got them at all except through him, unless it was by direct communication with Turner, which Turner denied, as we have said. His declaration to Velke that Harrison was not concerned with the sale was no doubt proof to the contrary, but that was for the jury. It may have been to cheat Harrison or to protect him. In any case Harrison knew of the

proposal, and sought to get the money in his hands.

[3] As to Murphy, the case is not so clear, but we think it is clear enough. He was the one who told Turner that he could get him a man to sell the cocaine, and who went with him to Harrison's, where he gave the samples to Harrison which Rush later used in his negotiations with Velke. This, if true, certainly made him an accessory to the resulting sale. Again, Murphy appeared at Harrison's soon after the sale, and, apparently in ignorance of the arrest, inquired of a government agent whether "they" had come back. The circumstances allowed the jury to infer that he meant Velke and Rush and was privy to this especial sale. While his privity with the general plans of the others was not of itself enough, it made a setting that required very little more to connect him with any particular transaction which Harrison might direct. Without saying how far the evidence might have convinced us, we believe that it justified the jury in concluding that Murphy was an accessory.

[4] The other points concern the general conduct of the trial. The verdict as recorded was against the two defendants on all counts, though the bill of exception shows that the jury merely returned a general verdict. The clerk's minutes probably control in any event, but aside from this, as the defendants were charged jointly, a general verdict was good on all counts. Brimie v. U. S., 200 F. 727, 119 C. C. A. 170 (C. C. A. 7). Besides, no objection was taken to the entry of the verdict as recorded, and the objection is purely technical.

[5] The nolle prosequi against Smith did not affect the result. As to the sale, the crime charged remained the same; as to the conspiracy, it is enough that more than one were convicted. It is no variance to allege a conspiracy of six and prove one of five. Our decision in Feder v. United States, 257 F. 694, 168 C. C. A. 644, 5 A. L. R. 370, touched a conspiracy between only two, and held that, if the judgment was reversed as to one, it must be reversed as to the other. It has no application to the case at bar.

[6] The court charged that the jury should convict if they believed the government's witnesses. The charge was too broad, since there were inferences of fact for the jury to draw from the testimony, even though it were true. However, no objection was taken at the time, and it is now too late after the time had passed when the error could have been corrected. It was of

minor consequence anyway, since the defendant's guilt was in substance established if the government's witnesses did speak the truth. The same considerations dispose of the error in the charge respecting the law of conspiracy, which is quite probably, as the judge thought, a mistake of the stenographer.

A statement of Turner, taken before trial, was admitted in evidence, but this was with the defendant's consent, and the point now raised is without merit.

[7] The statements of Rush and De Meglio after their arrest were also introduced in evidence. This was after the termination of the conspiracy, and the statements were not competent except as admissions against the defendant making them. At first, objection was made that they did not appear to be voluntary. The defendants were permitted to cross-examine the witness who took them down, and apparently were satisfied that this objection was untenable. They then went in without objection. Later a motion was made to strike them out except as against the defendant who made them, and this was granted. It is now argued that in any event De Meglio's statement was inadmissible, because he had pleaded guilty. The point is a good one, and ought to have been sustained had it been made, but the defendants were content with the disposition made at the time, and the objection is a clear afterthought.

[8] The last point which we think it necessary to consider is the refusal of trial judge to entertain a motion for a new trial after conviction and sentence. While in custody, Rush signed an affidavit saying that in his testimony he had been mistaken in saying that he had received samples of cocaine from Harrison in the presence of Turner. The truth was that he had got the samples from Turner himself, and had had no negotiation with Harrison in any way touching the sale of cocaine. Under authorities too numerous to mention, we should have had no jurisdiction to review a decision of this motion, however erroneous. But it is equally well settled that, if the judge declines to entertain the motion at all, the defendant is deprived of a right to which he is entitled. Mattox v. U. S., 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917.

[9] The record shows that the court supposed that the recantation of a witness could not be the ground for a new trial, and that he refused to consider the motion for that reason and that alone. In this he was in error. It is quite true that such testimony is for obvious reasons looked upon with the utmost suspicion, and that it is seldom enough, even from the mouths of witnesses for the prosecution. That is, however, not to the point here. We have nothing to do with the disposition of the motion, and at the risk of repetition we wish to make it quite clear that it is only when the court refuses to consider it, as in Mattox v. United States, supra, that the point can be raised on appeal. But this is such a case, and the judgment against Harrison must be reversed to give him the advantage, if it prove one, of a consideration upon the merits of his motion. We need hardly add that we mean not in the slightest way to intimate whether the motion should or should not prevail.

[10] The proper procedure in such a case, if there be no error in the trial up to verdict is to reverse the judgment and let the verdict stand. Felton v. Spiro, 78 F. 576, 24 C. C. A. 321 (C. C. A. 6). When the matter is reconsidered, the judge before whom the motion was made will in the exercise of his discretion either grant a new trial or deny it. If he denies it, he may again impose sentence upon the verdict. No question arises of the expiry of the term, because, the judgment being reversed, the record stands merely with a recorded verdict on which judgment may at any time be entered.

[11] The motion was, as we have said, made after judgment, and not, as in Mattox v. United States, supra, before it. The better rule is that the motion and order upon it are not part of the record (4 C. J. 161–164), as obviously they were not at common law. Unless included in the bill of exceptions, they cannot be brought to our notice at all. As the error is the same whether made before or after judgment, we have no alternative but to deny any relief or to allow it to be incorporated into the bill of exceptions, as has here been done. We regard section 269 of the Judicial Code as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), as intended to extend our review in just such respects as this. The phrase there used, "record before the court," is certainly broader than any "record" known to the common law. It was apparently the purpose of the statute to allow a review of all errors committed by the court below, regardless of the limits which had theretofore obtained. Thus we think we need not consider the highly technical question as to whether under strict common-law procedure a bill of exceptions might include

anything which occurred after verdict or after judgment.

[12] The imposition of cumulative sentences, even though the offense was in substance single, was regular (Morgan v. Devine, 237 U. S. 632, 35 S. Ct. 712, 59 L. Ed. 1153), so that we could not as a matter of law declare that the District Court erred in imposing an aggregate sentence of ten years for a single offense whose maximum sentence was but five years. However, under section 9 of the Harrison Act the maximum fine is $2,000, not $5,000, and Murphy's sentence must therefore be reversed. Furthermore, we think it permissible to add that in our judgment it is only in very rare cases, of which this is not one, that the cumulation of sentences is proper, where the counts are for merely alternative forms of the same offense, and where a conspiracy count is added to a count for the substantive crime. It appears to us that the maximum sentence prescribed by Congress is intended to cover the whole substantive offense in its extremest degree, no matter in how many different ways a draughtsman may plead it, and even though he add a count for conspiracy, that darling of the modern prosecutor's nursery.

The judgment as to Harrison is reversed, the verdict of guilty on all three counts to stand. The District Court is directed to determine upon the merits Harrison's motion for a new trial. In case the motion be granted, the verdict will be set aside and a new trial ordered. In case it is denied, the court will thereupon resentence Harrison as it may be advised.

The judgment as to Murphy on the first and second counts is reversed, and the cause remanded to the District Court to resentence him upon these counts to such fine and imprisonment as may seem to it proper, the fine not to exceed $2,000 on each count. The judgment on the third count is affirmed.