**B. H. NEWMAN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15957.**

United States Court of Appeals
Fifth Circuit.

Nov. 27, 1956.

T. Reuben Burnside, Thomson, Ga., B. H. Barton, Augusta, Ga., for appellant.

William C. Calhoun, U. S. Atty., William T. Morton, Asst. U. S. Atty., Augusta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

After affirmance of his conviction largely on the testimony of Williford, a paid Government informer, for illicit whiskey operations, Newman· v. United States, 5 Cir., 1955, 220 F.2d 289, certiorari denied 350 U.S. 824, 76 S.Ct. 51, 100 L.Ed. 736, Newman filed in the District Court a motion for new trial under Rule 33, Fed.Rules Crim.Proc. 18 U.S.C.A., Harrison v. United States, 5 Cir., 191 F. 2d 874, on the basis of newly discovered evidence. The "new" evidence was not new at all in the real sense. On the contrary, it was but an assertion that Williford's former, "old," testimony was false as his annexed affidavit of recantation reflected.

But at the hearing on the motion, a most curious development occurred. When the United States Attorney, who had subpoenaed Williford, called for him to take the witness stand presumably to test the circumstances leading up to the recantation, the affidavit and its trustworthiness, a lawyer appearing for the witness Williford, sought, and obtained, a recess to advise with Williford on a Fifth Amendment plea of self-incrimination. Without ever uttering one word, either of formal identification or claim of privilege, Williford was shortly "excused" as a witness on the plea of self-incrimination made for him by his counsel.

The affidavit of recantation stood thus in naked isolation—opposed not only to sworn and detailed testimony of this witness on the original trial—but lacking as well a present vouchsafing for its current truth. Was the Judge required to accept that?

█ Not to be forgotten is the decisive factor that relief being pursued was a request for a new trial because injustice had been done. That presented a solemn, serious matter, the solution of which was the very act of adjudication, the full exercise of the judicial function. This called for considerate deliberation and decision as a Judge, weighing carefully all that would indicate whether justice or injustice had been the result. The very nature of the process negatived, therefore, the basis for the claim that a paper—the recanting affidavit—compelled automatically the grant of a new trial. To honor such a claim—to test right by paper form, not substance— would be abdication of constitutional duty, frequently to persons who, as participants, co-conspirators, or actors in the criminal activity initially charged, might from a variety of base motives, or importunities, be impelled, by recantation, to come to the aid of a person whose conviction has been brought about by their testimony, confident, as experienced criminal litigants, that the unusual difficulties in successful prosecution for perjury would expose them to no real peril.

█ The function, on well-defined standards,[1] is that of the District Judge for it is " * * * important for the orderly administration of criminal justice that findings on conflicting evidence by trial courts on motions for new trial based on newly discovered evidence remain undisturbed except for most ex-

1. Recantation is "looked upon with the utmost suspicion," Harrison v. United States, 2 Cir., 7 F.2d 259, 262. Ordinarily, " * * * a new trial should be granted when, (a) The court is reasonably well satisfied that the testimony given by a material witness is false. (b) That without it the jury *might* have reached a different conclusion. * * * " Larrison v. United States, 7 Cir., 24 F. 2d 82, at page 87. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L. Ed. 562; Gordon v. United States, 6 Cir., 178 F.2d 896, 900, certiorari denied 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1335; United States v. Troche, 2 Cir., 213 F. 2d 401, 403; Harrison v. United States, 5 Cir., 191 F.2d 874; see, Martin v. United States, 5 Cir., 17 F.2d 973, 976, certiorari denied 275 U.S. 527, 48 S.Ct. 20, 72 L.Ed. 408, in which the recanting affidavit of a key witness was rejected since "that affidavit was obtained under very suspicious circumstances."—a situation paralleled here since mystery then and still prevails as to the making of Williford's affidavit, and his real affirmance of it.

traordinary circumstances * * *," United States v. Johnson, 327 U.S. 106, at page 111, 66 S.Ct. 464, at page 466, 90 L.Ed. 562, at page 565. If the District Judge, on the basis of the whole record of the original trial and the matters presented on the hearing of the motion, believes the statements in the affidavit of recantation to be false and is not reasonably well satisfied that the testimony given by the witness on the trial was false, the decision is for him to reach for he is "not at liberty to shift upon the shoulders of another jury his own responsibility, but [is] charged with the responsibility to seek the truth himself * * *." Gordon v. United States, 6 Cir., 178 F.2d 896, 900, certiorari denied 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1353.

■ The Trial Judge had ample basis for impliedly concluding that Williford's trial testimony, not his affidavit,[2] was the truth. As a paid Government informer, he had, so he testified, between October 2 and October 12 hauled several loads of moonshine in a truck admittedly purchased by Newman and registered in his name. The truck was, on at least one of these occasions, parked at Newman's residence whose location was likewise undisputed and proved by other evidence. On each occasion Williford recognized and identified Newman, and Newman's presence there, on at least one time, was corroborated by Williford's casual, but accurate, description of Newman's passenger car which admittedly was of distinctive model and color. Williford was driving the truck with a full load of moonshine on October 12 when officers, by prearrangement, trailed the truck, overtook it and seized the contraband. To destroy this positive linking of Williford to a truck Newman had just bought and registered ten days before, Newman offered an unrecorded bill of sale dated October 10 made out to a person never identified, and notarized by the same notary who had acknowledged another spurious vehicle title paper containing false information. In addition, testimony on the hearing of the motion by a Government agent showed that Williford, during his actions as an informer, reported many facts about Newman and his illicit activities and plans which were corroborated or turned out to be true.

The Judge's conclusion was reasonable and well founded. He did not abuse his discretion in overruling the motion for new trial, Harrison v. United States, 5 Cir., 191 F.2d 874, 876.

Affirmed.

2. If recantation is normally to be viewed with suspicion, it is doubly infirm when couched, as here, in the vaguest of language impling a mistaken *opinion* as to identification:

"Affiant [Williford] * * * says * * * that he testified as a witness for the Government * * * and in his testimony * * * identified B. H. Newman as being one of said co-defendants connected with the case and in the violations therein charged, that as a matter of fact, affiant had seen B. H. Newman only two or three times before said occasions referred to in my testimony when I identified him, and on said occasions when I did identify him it was at night and, as a matter of fact, I was not correct in so identifying him; that while I thought I was correct nevertheless I was mistaken and I now say it was another party, unknown to me, but whom I thought was B. H. Newman, except affiant further says that he was not mistaken in his identity of B. H. Newman when affiant identified him in the Court room at the trial of the case * * *."