**Darrel Eugene DUNBAR, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2555.**

Supreme Court of Alaska.

Oct. 19, 1976.

Thomas F. Keever, Fairbanks, for appellant.

Natalie K. Finn, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

RABINOWITZ, Justice.

Appellant Darrel Dunbar contends that the superior court erred in denying his amended motion for a new trial which was based on the grounds of newly discovered evidence. We affirm the superior court's denial.

After indictment and trial by jury, Darrel Dunbar was convicted of two separate counts of incest. At trial the primary testimony in support of the state's case was elicited from appellant's then 16-year-old daughter, Judy. This witness testified that appellant had engaged in sexual intercourse with her on several occasions. Judy's brother, David, then age 15, testified that he observed his father and Judy engaged in sexual relations, "and that his mother had told him sometime before that this incestuous relationship existed."[1]

Nine months after appellant had been sentenced to 5 years' imprisonment, he moved for a new trial on the grounds of

---

1. A detailed exposition of the facts can be found in our first opinion in this matter. *Dunbar v. State*, 522 P.2d 158 (Alaska 1974).

newly discovered evidence.[2] His original motion for new trial was based principally on an affidavit given by Judy. In her affidavit Judy averred, in part, as follows:

That I testified that I had had sexual relations with Darrell Dunbar.

That my statements were lies and were not true in any way.

That I had been in trouble in Seattle with a boy named Poitrus and as a result my father was very strict. I was limited in what I could do to the extent that I felt that I was in jail.

That I made the accusations against my father in order to get my freedom from his control and that the statements made by me were not true. . . .

This first motion for a new trial was denied. Three months later counsel for appellant[3] filed an amended motion for a new trial. This amended motion was accompanied by essentially the same supporting affidavits as the initial motion plus an additional affidavit from David Dunbar. In his affidavit David stated in part:

That I testified at the trial of Darrel E. Dunbar that I had observed him having sexual intercourse with my sister, Judy.

That at the time I had not seen my parents for a period of five (5) months and they had not called or written to me even though the district attorney that was handling the case said that they could.

That at the time that I testified I was angry with my father and thought that he did not have any care or concern or love for me or my sisters.

That what I testified to was not true and the statements were made because of

anger at my father and at the prompting of my sisters.

. . . . . .

That I have had an opportunity to think about this for a long time and I don't want an innocent man's conviction on my conscience.

That if a new trial were held today my testimony would be the same as I have stated in this affidavit.

The amended motion for new trial was thereafter denied by minute order.[4] Dunbar then appealed to this court from the superior court's denial of his amended motion for new trial.

In *Dunbar v. State*, 522 P.2d 158, 160 (Alaska 1974), we viewed the issue before us then as whether ". . . the judge was within the bounds of the discretion vested in him in holding that the newly discovered evidence—the recantations of the principal witnesses—was not such as would probably produce an acquittal at a new trial." In our opinion in *Dunbar* we deemed it significant that the superior court did not conduct ". . . an evidentiary hearing at which the recanting witnesses' statements would be tested by cross-examination and where their demeanor could be observed. He made no findings of facts—he gave no reasons for the grounds of his decision to deny a new trial."[5] In view of these circumstances we remanded the matter to the superior court for further proceedings, stating:

With such a sparse record we simply cannot decide whether there was an abuse of discretion or not. The case will have to be remanded for an evidentiary hearing at which Judy, David and Gloria should be called to testify and be examined regarding their recanting affi-

---

2. Crim.R. 33 provides in part:

The court may grant a new trial to a defendant if required in the interest of justice. . . . A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment . . . .

3. Appellant's counsel in this appeal did not represent Dunbar in the superior court.

4. Both the initial motion for new trial and the amended motion for new trial were ruled upon by Judge Everett W. Hepp.

5. *Dunbar v. State*, 522 P.2d 158, 160 (Alaska 1974).

davits in contrast to their trial testimony. This should be followed by a reasonably detailed statement of reasons by the judge for his decision to either grant or deny the motion for a new trial.[6] (footnote omitted)

Upon remand respective counsel stipulated that the evidentiary hearing ordered by this court could be conducted by Judge Taylor.[7] After holding a hearing at which Judy, David and Gloria were among the witnesses called, the superior court entered detailed findings of fact and conclusions of law which embodied the foundation for its decision denying Dunbar's motion for new trial.

In its conclusions of law the superior court first determined that:

> The testimony of 'David Dunbar and Judy Dunbar Embry presented at trial, coupled with the corroborating testimony presented by other witnesses, proved beyond a reasonable doubt Darrel Eugene Dunbar's guilt as to the two counts of incest.

Further, the superior court concluded that neither Judy nor David's testimony at the hearing would have produced an acquittal at a new trial since their testimony in no way contradicted their trial testimony.[8] As was indicated earlier there is both factual and legal support for the decision reached by the superior court that Dunbar's motion for new trial should be denied.

Of controlling significance is the fact that Judy and David Dunbar, when called as witnesses at the hearing, each invoked the privilege against self-incrimination. At the hearing David Dunbar gave no evidence regarding his trial testimony. Although his recantation affidavit was shown to him, he declined to make any statement regarding the affidavit other than that he knew what the identification was. Judy Dunbar refused to affirm or repudiate the evidence she gave at trial and refused to identify her affidavit which had been previously filed by appellant in support of his motion for a new trial.[9]

The circumstances of the case at bar parallel those found in *Newman v. United States,* 238 F.2d 861 (5th Cir. 1956). There the Fifth Circuit upheld the trial court's denial of a motion for new trial in

---

6. *Id.* At the time of trial Gloria Dunbar, 18 years old, gave incriminating testimony against her father. In her affidavit which was made part of appellant's original motion for new trial, she stated in part that:

. . . when I came back to Alaska for the trial I was interviewed by the assistant District Attorney and that we went over the statement that Detective Wood had prepared for me and that there were a bunch of men in there and I was scared to death and I don't remember how much of what I testified to was what I could remember and how much was what was told to me by the people who was quizzing me.

That I suffer from epilepsy and take phenobarbital and dilantin for this condition and that I very often have difficulty remembering things and often remember something that I have been told as if it were something that I actually saw when it was really not. In our first opinion in *Dunbar* we concluded that "Gloria's affidavit is of little assistance to appellant." *Dunbar v. State,* 522 P.2d 158, 159 (Alaska 1974).

7. In the interim between Judge Hepp's denial of the amended motion for new trial and our

remand, Judge Hepp retired from the superior court.

8. In *Dunbar v. State,* 522 P.2d 158, 159 (Alaska 1974), we said that "A motion for a new trial based on newly discovered evidence must meet certain requirements." These requirements which were first adopted by this court in *Salinas v. State,* 373 P.2d 512, 514 (Alaska 1962), are:

(1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i. e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.

9. In addition, Gloria Dunbar, in essence, attempted to repudiate her affidavit which had been used by appellant in support of the motion for a new trial.

the following factual context: Newman was convicted for illicit whiskey operations largely on the testimony of one Williford, a paid government informer. The basis of the motion was an affidavit of Williford in which he purported to recant his trial testimony. At the hearing on the motion . . . a most curious development occurred. When the United States Attorney, who had subpoenaed Williford, called for him to take the witness stand presumably to test the circumstances leading up to the recantation, the affidavit and its trustworthiness, a lawyer appearing for the witness Williford, sought, and obtained, a recess to advise with Williford on a Fifth Amendment plea of self-incrimination. . . .

The affidavit of recantation stood thus in naked isolation—opposed not only to sworn and detailed testimony of this witness on the original trial—but lacking as well a present vouchsafing for its current truth. Was the Judge required to accept that? [10]

In *United States v. Lawrenson*, 315 F.2d 612 (4th Cir. 1963), *cert. denied*, 373 U.S. 938, 83 S.Ct. 1542, 10 L.Ed.2d 693, the appellant had been convicted of four counts of bank robbery. A motion for new trial was made based on the unsworn statement of Robert Cutler, indicating that Lawrenson had no part in the crime. When Cutler was placed on the stand he refused to answer questions on the ground that the answers might tend to incriminate him.

The Fourth Circuit, in light of these circumstances, upheld the trial court's denial of the motion for a new trial. Thus, it is established that in the situation in which a recanting witness asserts the privilege against self-incrimination when called to testify, federal courts have denied the motion.

*Newman* and *Lawrenson* are both reflective of the mainstream of federal decisional law which adopts the view that recantation should be "looked upon with the utmost suspicion." *Harrison v. United States*, 7 F.2d 259, 262 (2d Cir. 1925); *see also United States v. Johnson*, 487 F.2d 1278 (4th Cir. 1973); *United States v. Coleman*, 460 F.2d 1038 (8th Cir. 1972), *cert. denied*, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122; *United States v. Gaither*, 142 U.S.App.D.C. 234, 440 F.2d 262 (1971).[11] According to Professor Charles Allen Wright:

This judicial skepticism seems entirely appropriate. Perhaps occasionally a perjurious witness feels remorse for having led to the conviction of an innocent man, but these cases must surely be rare. On the other hand, the possibility that one who stands convicted of a crime will use coercion or bribery to persuade a witness to recant is very real.[12]

In light of the foregoing, our review of the evidence adduced at the trial, and Judy and David's invocations of their respective privileges against self-incrimination, we

---

10. *Newman v. United States*, 238 F.2d 861, 862 (5th Cir. 1956). In commenting on the extent of the trial court's duties when faced with a request for relief because an injustice had been allegedly perpetrated, the Fifth Circuit further commented:
.  .  .  This called for considerate deliberation and decision as a Judge, weighing carefully all that would indicate whether justice or injustice had been the result. The very nature of the process negatived, therefore, the basis for the claim that a paper—the recanting affidavit—compelled automatically the grant of a new trial. To honor such a claim—to test right by paper form, not substance—would be abdication of constitutional duty, frequently to persons

who, as participants, co-conspirators, or actors in the criminal activity initially charged, might from a variety of base motives, or import unities, be impelled, by recantation, to come to the aid of a person whose conviction has been brought about by their testimony, confident, as experienced criminal litigants, that the unusual difficulties in successful prosecution for perjury would expose them to no real peril.

11. For state decisional authority to the same effect, see *State v. Credeur*, 328 So.2d 59, 61–63 (La.1976); *State v. Frost*, 315 A.2d 198 (Me.1974).

12. 2 Wright, Federal Practice and Procedure: Criminal § 557, at 528 (1969).

hold that the superior court should be sustained in its conclusion that "[n]o evidence was produced at said hearing which, at a new trial, would probably produce an acquittal."

Affirmed.