**John G. DORMAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4444.**

Supreme Court of Alaska.

Jan. 23, 1981.

450

A. Lee Peterson, Anchorage, for appellant.

Leonard M. Linton, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

John G. Dorman appeals his conviction of the second degree murder of Arthur E. Sutherland. Dorman advances several specifications of error concerning his motions for acquittal and for a new trial, improper argument to the jury by the prosecutor, introduction of evidence of prior crimes, and certain jury instructions. On the basis of the improper argument point, we reverse the conviction and remand for a new trial.

The investigation of this case began on May 14, 1977, with the discovery of a body, later identified as that of Sutherland, in water off the edge of Old Seward Highway. The body was wrapped in visqueen which was wired shut at one end, and it was clad only in blue jeans and a greenish blue wool shirt. No shoes or underwear were found at the scene, but jewelry and Sutherland's driver's license were on the body. Samples of hair were taken from the body and from the visqueen.

The body was in an advanced stage of decomposition, but an autopsy determined the cause of death to be a gunshot wound in the neck. Entrance and exit wounds from a bullet were also found in the victim's arm, but only a fragment of a bullet was found in the body. The pathologist expressed the opinion that the neck and arm wounds were caused by two separate shots. Gravel-like material was imbedded in the body's back. The pathologist could not determine the time of death, but his testimony established that the state of the body indicated that it had warmed and thawed after lying in a snow bank for at least one month, and possibly several months.

Police were led to suspect that John Dorman was connected with the death by a confidential informant. Dorman was also implicated by Mary Masidonski, who testified that she had been living with Sutherland prior to his disappearance on October 20, 1976.

A careful investigation of the house in which Dorman and his girlfriend, Terry Thomas, were living at the time of Sutherland's disappearance revealed several items of physical evidence which tended to incriminate Dorman in the alleged murder. The police lab technician found small amounts of what she concluded was dried blood on the floor of the basement. Fingerprints of Dorman's, encrusted with what was apparently the same substance, were found on a pair of shears belonging to him and on a door to the tool room in the basement. Wire of the same type as that with which the visqueen holding the body had been closed was found attached to the ceiling of the basement of Dorman's house. Some of the ceiling wire had been cut away, and the total length of the wires used to tie the visqueen was slightly less than the length of the wire missing from the ceiling. The wires found with the body and those from the basement ceiling had been cut with a shear-type wire cutter with serrated jaws having teeth spaced .18 to .2 inches apart. The stained, fingerprinted shears identified as Dorman's were of this type. Carpet-like fibers were found on the victim's clothing which had microscopic characteristics identical to those of fibers found on the floor of the basement. A carpet of similar color, which was on the stairs to the basement when Dorman moved in, was missing after he moved out. Animal hairs were found on the victim's clothing and the visqueen, and animal hairs of similar characteristics were found in the basement. Both sets of animal hairs were similar to samples taken from a dog belonging to Dorman's girlfriend, which was being kept in the house at the time of the victim's disappearance. Additionally, two hairs matching the head hair of the victim were found in

the basement. Testimony at trial indicated that there had been a roll of visqueen in the garage of the house and that clothing and perishable food were left in the house by Dorman after his departure.

Dorman admitted that the victim came to the house on the date of his disappearance,[1] and at trial no one testified to seeing the victim after this visit. Dorman also admitted that he moved with his girlfriend to Valdez on the date the victim disappeared, although Dorman's and other testimony indicated that this move had been planned in order for Dorman to begin a job in an illegal gambling establishment in Valdez. Dorman testified that he had left some possessions in the house with the intention of returning to get them if the job in Valdez worked out. Dorman stated that he and the victim were friends and that he had no idea how Sutherland had been killed.

Other evidence which tended to negate Dorman's involvement in the murder was presented. One friend of Dorman's testified to visiting Dorman at his house on the suspected day of the murder and noticing nothing out of the ordinary.[2] The main part of the bullet which wounded the victim's arm has never been located, despite a thorough search of Dorman's house. It was argued that the gravel-like material imbedded in the back of the body made it unlikely that the murder had been committed indoors and the body immediately wrapped in visqueen. It was also argued that the fact that the body had bare feet and wore no underwear indicated the possibility of a murder closer to Sutherland's residence prior to his having dressed to go out. Mary Masidonski's recollection of what Sutherland had been wearing when he left his house was inconsistent with the clothing found on the body. Mary Masidonski and an acquaintance of the victim who was allegedly involved in the cocaine business left the state together within two weeks of Sutherland's disappearance, after giving his

personal belongings away. Another of Sutherland's acquaintances left his residence next door to Sutherland's residence one or two days after the disappearance, according to Masidonski. Dorman testified that he had given a key to his house to Sutherland, and tracks in the snow at the back of the house and near the garage were observed by the rental manager of the house after Dorman had left for Valdez. The first snow of that year did not fall until after Dorman left. Dorman did not object to the landlord's agent entering the house, cleaning it, and boxing up personal possessions as a result of Dorman's eventual failure to pay rent after leaving for Valdez.

Dorman was arrested on November 29, 1977. Without objection by defense counsel, the arresting officer testified at trial that from the time of the arrest to the time Dorman was given a *Miranda* warning, a period of about eight minutes, Dorman asked no questions. Defense counsel later objected unsuccessfully to testimony regarding Dorman's reactions to subsequent accusations by the police officers, but the court stated to the prosecutor that it would allow no comment on Dorman's silence in that context. During closing argument, the prosecutor referred to Dorman's silence immediately following the arrest.

Mary Masidonski testified, over defense counsel's objection, about Sutherland's business as a cocaine dealer. Without further objection, she told of Dorman's purchase of cocaine from Sutherland. On cross-examination Masidonski admitted to heavy use of cocaine herself during the time she lived with Sutherland. Dorman later admitted to buying cocaine for his personal use from Sutherland, but maintained that he had not been involved in the drug business. On the basis of this evidence and a photograph of Dorman preparing cocaine for use, the prosecuting attorney suggested during closing argument that the drug business was a motive for Dorman to kill Sutherland.

---

1. Dorman's girlfriend also testified to Sutherland's visit, although in an earlier statement to police she denied that it took place.

2. Dorman and his girlfriend testified that several people besides the victim came over that day, but only the single witness testified. The witness testified that at least one other friend of Dorman's had been there in his presence.

At appropriate times during and after the trial, the defense moved for judgment of acquittal and, in the alternative, for a new trial. The grounds asserted included insufficiency of evidence to support the verdict, improper comments by the prosecutor to the jury, newly discovered evidence, and inadequacy of the state's investigation. The new evidence claimed by the defense was an affidavit from William A. Vaughan, an acquaintance of both Dorman and Sutherland, stating his knowledge of a planned confrontation on the day of the disappearance between Sutherland and a cocaine dealer who had swindled him. The defense also claimed that the state had failed to follow up leads on other suspects that were implicated by Mary Masidonski's testimony. These motions were all denied by the superior court.

## I. Denial of Motion for Acquittal.

■ Dorman submits that the evidence against him was insufficient to sustain his conviction, and that the superior court therefore should have granted his motion for acquittal pursuant to Criminal Rule 29.[3] The standard to be applied in Alaska by a trial court in ruling on a motion for acquittal was repeated in *Des Jardins v. State*, 551 P.2d 181, 184 (Alaska 1976), *quoting Gray v. State*, 463 P.2d 897, 905 (Alaska 1970):

> [T]he judge must take the view of the evidence and the inferences therefrom most favorable to the state. If the court determines that fair-minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then the case must be submitted to the jury. [footnote omitted]

This test "applies in cases where the evidence is direct and in cases based on evidence which is wholly circumstantial." *Des Jardins v. State*, 551 P.2d 181, 184 (Alaska 1976). Upon review, this court "will con-

sider only those facts in the record most favorable to the prosecution and such reasonable inferences as a jury may have drawn from them." *Martin v. City of Fairbanks*, 456 P.2d 462, 464 (Alaska 1969). The question on review is, then, "whether the finding of guilt is supported by substantial evidence, that is, such relevant evidence which is adequate to support a conclusion by a reasonable mind that there was no reasonable doubt as to [the defendant's] guilt." *Id.* at 464–65.

■ Dorman regards the circumstantial evidence which the state presented to prove his guilt as insufficient to support the verdict under this standard. He claims that the ease with which dog hairs are picked up on a person's clothing, alternative explanations for the blood stains in the house, and possible alternative sources of wire and visqueen undermine the probative value of the evidence against him. Dorman attacks generally the reliability of the laboratory tests conducted on items of physical evidence introduced against him, and argues that the state failed to show that he had a strong motive, in comparison with some of Sutherland's associates, for the killing. We disagree. Substantial physical evidence and testimony was presented by the state which showed that Sutherland was probably killed by Dorman. While alternative explanations for the bloodstains, fingerprints, dog hairs, and other incriminating evidence can be formulated, the reasonable inferences to be drawn from the state's evidence are that the body was wrapped in Dorman's house, and that few people had free access to the house besides Dorman and possibly Sutherland. While several people could have had a motive to kill Sutherland due to the nature of his business, the state did show that Dorman had bought cocaine from the victim on more than one occasion and therefore had a possible motive for the murder. Considering only the facts in the record favor-

---

**3.** Alaska R.Crim.P. 29(a) reads in pertinent part:

> The court, on motion of a defendant or of its own motion, shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed, if the evidence is insufficient to sustain a conviction of such offense or offenses.

able to the prosecution, we think reasonable minds could conclude that Dorman was guilty beyond a reasonable doubt, and so conclude that the case was properly before the jury.

## II. Denial of Motion for New Trial.

Rule 33 of the Alaska Rules of Criminal Procedure provides that a new trial may be granted if required in the interest of justice. Dorman asserts that a new trial was justified in this case on three grounds: 1) the verdict was against the weight of the evidence; 2) the state failed to adequately investigate other suspects; and 3) new evidence was discovered.

### A. Verdict Against the Weight of the Evidence.

In *Amidon v. State*, 565 P.2d 1248, 1262 (Alaska 1977), this court contrasted the approach a trial judge must take in considering a motion for a new trial with the approach to be taken in passing upon a motion for acquittal:

> Unlike its function in passing upon the motion for judgment of acquittal, the trial court, in deciding a motion for a new trial on the ground that the verdict is contrary to the weight of the evidence, may weigh the evidence and determine the credibility of witnesses. [footnotes omitted]

The appropriate standard for the identical Federal Rule of Criminal Procedure 33 is discussed in 2 C. Wright, *Federal Practice and Procedure* § 553, at 487 (1969) (footnotes omitted):

> It has been said that on such a motion the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

We will reverse a denial of a motion for a new trial on the ground that the verdict is contrary to the weight of the evidence only if the ruling is shown to be "an abuse of discretion." *Amidon v. State*, 565 P.2d 1248, 1262 (Alaska 1977).

■ Dorman contends that this case fits in the "exceptional" category requiring a new trial because the evidence casts at least as much suspicion on persons such as Mary Masidonski and Sutherland's cocaine-dealing associates as it does on Dorman. But while the evidence shows that other associates of the victim behaved suspiciously following his disappearance and may have had a motive to kill him, we cannot say that the evidence considered as a whole preponderates heavily against the verdict. There was substantial incriminating physical evidence presented against Dorman and his defense rested primarily on his own and his girlfriend's testimony, which was somewhat discredited by his girlfriend's prior denial of Sutherland's visit to the house. That the physical evidence was not conclusive, and that the testimony of Mary Masidonski was also discredited by her hasty departure from the state after the victim's disappearance, does not convince us that the superior court abused its discretion in refusing to grant the motion for new trial. It is apparent that the court properly reviewed all of the evidence prior to ruling on the motion.[4]

### B. Failure to Adequately Investigate Other Suspects.

A confidential informant originally told an F.B.I. agent that Dorman was involved in the killing. Dorman maintains that subsequently the police centered their investigation on him to the exclusion of others who were at least as likely to have murdered Sutherland.

4. The trial judge concluded:

> [A]fter having reviewed all of the testimony and all of the evidence, I am of the opinion that the jury verdict was correct, that there was substantial evidence to proceed to the jury, that the jury seriously considered the evidence ... before them, reviewed a great deal of the testimony and came forth with a verdict that they had unanimously agreed upon.

 The record reveals that the state was aware of the existence of other suspects prior to trial.[5] The record does not show whether the police made any effort to investigate or contact any of these people.[6] However, neither does the record indicate that Dorman was denied access to any evidence or investigative leads which the state had, or that any failure to investigate by the state was the result of a deliberate attempt to suppress or prevent the discovery of evidence. If exculpatory evidence comes to the attention of the prosecution during the course of the investigation, the prosecution has a duty to furnish defense counsel with its substance; deliberate suppression of evidence by the prosecution may violate a defendant's constitutional right to due process. *See Brady v. Maryland*, 373 U.S. 83, 86–87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (1963); *State v. Turrubiates*, 25 Ariz.App. 234, 542 P.2d 427, 432–33 (1975). Negligence in criminal investigations is not to be condoned either. But without evidence of bad faith in the investigation or purposeful hindrance of Dorman's own ability to pursue investigative leads, we cannot conclude that any investigative defects in this case require a new trial. Dorman's counsel took the opportunity to argue to the jury that the state's investigation of other suspects was inadequate, and the jury did not agree.[7] We think denial of the motion for a new trial on this ground was proper.

**C. Newly Discovered Evidence.**

 One investigative lead of which defense counsel was fully aware prior to trial was the statement by William Vaughan, an acquaintance of both Dorman and the victim, that he had seen the victim on the day of his disappearance at a time later than Sutherland's visit to Dorman's house. According to defense counsel, Vaughan was unwilling to testify at trial. After Dorman was convicted, however, Vaughan came forward, volunteered to testify, and signed an affidavit containing the above information. The affidavit also stated that Vaughan had first-hand knowledge of a planned confrontation on the fateful day between Sutherland and a violently disposed individual, Dana Masey, over adulterated cocaine; it went on to attest to Masey's subsequent sudden departure from the state. In this same affidavit, Vaughan stated that Dorman had a reputation as a consumer, but not as a dealer, of cocaine. Dorman argues that the information about the confrontation between Sutherland and Masey constitutes newly discovered evidence which requires that a new trial be granted.

In *Salinas v. State*, 373 P.2d 512, 514 (Alaska 1962), *quoting Pitts v. United States*, 263 F.2d 808, 810 (9th Cir.), *cert. denied*, 360 U.S. 919, 79 S.Ct. 1438, 3 L.Ed.2d 1535 (1959), this court set out several requirements for a new trial based on newly discovered evidence:

**5.** Mary Masidonski's testimony before the grand jury, although confusing, indicated that Sutherland, on the day he disappeared, was going to confront a cocaine dealer in Valdez and John Dorman about some adulterated cocaine that had been distributed in Alaska contrary to Sutherland's directions. She also indicated that John Dorman "could have" killed Sutherland because Dorman was a close friend of the Valdez dealer. At trial, in a hearing outside the presence of the jury, Masidonski stated that Sutherland told her he was going to confront Dorman about the adulterated cocaine, but that he also intended to see a man named Stu, and another called "Poncho." This testimony was subsequently excluded from the trial jury as hearsay. It was Masidonski's testimony at trial that revealed that she and another associate of Sutherland's left the state together within two weeks after Sutherland's disappearance.

**6.** The police investigative report was not made part of the record. The record does contain a sworn statement by Dorman's counsel that the report reveals that no effort was made to investigate other suspects once attention was focussed on Dorman.

**7.** *Cf. People v. Norwood*, 37 Colo.App. 157, 547 P.2d 273, 278 (1975) (citation omitted):

Defendant was not precluded, on cross-examination or closing argument, from presenting her theory of the case that a more thorough investigation might have established reasonable doubt as to her guilt or even her innocence. The jury with full knowledge of all these facts chose to think otherwise.

A motion for a new trial based on the ground of newly discovered evidence has to meet the following requirements: (1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i. e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.

Accord, Dunbar v. State, 522 P.2d 158, 159 n.2 (Alaska 1974), aff'd after remand, 555 P.2d 548 (Alaska 1976); Rank v. State, 382 P.2d 760, 761 (Alaska 1963).

Salinas also set forth the standards for appellate review of the grant or denial of a new trial motion grounded on newly discovered evidence:

In the first place, the motion for a new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court, the exercise of which, in the absence of abuse is not reviewable. This is so for the reason that the trial judge is in a better position to determine the possible effect and merit of the alleged newly discovered evidence since he presided over the original trial and heard all the evidence there.

373 P.2d at 513 (footnotes omitted).

Even assuming, as Dorman suggests, that Vaughan's testimony regarding Dana Masey was not discovered until after the trial, it is clear that defense counsel failed to meet at least one of the essential criteria cited in Salinas—the exercise of due diligence in obtaining the evidence. It would have been possible to obtain Vaughan's testimony prior to the end of trial by subpoena. Yet the defense made no such effort, despite knowledge of the exculpatory value of Vaughan's original statement regarding the victim's whereabouts after his visit with Dorman.[8] We conclude that the superior court did not abuse its discretion in denying the motion for a new trial.

### III. Comments by the Prosecutor Regarding Dorman's Silence upon Arrest.

The prosecutor, in the rebuttal portion of his closing argument, commented that the jury should infer guilt from the fact that Dorman remained silent between the time of his arrest and the time he was advised of his Miranda rights, a span of about eight minutes.[9] Dorman asserts that these com-

---

**8.** Cf. Salinas v. State, 373 P.2d 512, 514–15 (Alaska 1962) (failure to ask for continuance at trial when it became apparent that witness could not be found was failure to exercise due diligence). Defense counsel here argues that the information obtained from Vaughan prior to the trial's end was not significant because it was limited to the claim that Vaughan had seen the victim later in the day than Dorman and his girlfriend claimed to have seen him. Given the substantial support to Dorman's testimony which a third party witness's statement about having seen Sutherland later in the day would have provided, we reject this argument.

**9.** The comments were as follows:

It's always difficult to look inside somebody's mind to see exactly what they are thinking or what is actually going through your mind at a particular time, but there is one brief moment in time that I would like to call to your attention, and that is a period which is described by Investigator Stearns as being approximately eight minutes long. A period between the time that Investigator Stearns told Mr. Dorman he was under arrest and the time that Investigator Miller advised him of his rights. Now, according to Investigator Stearns, that was a period of about eight minutes. According to Investigator Stearns, he told and said to Mr. Dorman, you're under arrest for murder. Now, in the balance of that eight minute period, according to Investigator Stearns, there wasn't—there was no question by Mr. Dorman, and it's been pointed out to you by the Court and of course by counsel and I rely on the same thing too. One of the reasons, in fact the reason that cases are submitted to juries is because juries have a common experience in living, a common experience in dealing with people and collectively can come very close to engaging human responses or lack of responses. What would you expect a person to have said at that point, some time in that eight minute period when Investigator Stearns comes up to him and says, you're under arrest for murder? When you examine it you would probably say to yourselves that one of the first questions or the question that you would expect to be asked is, who got killed?

ments violated his constitutional right to remain silent to avoid self-incrimination.[10]

The remarks in question referred to testimony of one of the arresting officers elicited both by the prosecution on direct examination and by the defense on cross-examination. Defense counsel made no objection to the testimony at that time, and expressly mentioned Dorman's *Miranda* rights during cross-examination, indicating an awareness of the constitutional right involved. Defense counsel likewise made no objection to the remarks themselves in the closing argument, asked for no cautionary instruction, and made no motion for mistrial at the appropriate time. Neither the issue of the testimony nor the closing argument was mentioned in the motion for a new trial. The point was first raised on appeal as an amendment to the original statement of points on appeal, apparently after Dorman had changed counsel.

■ Under the doctrine of "plain error" embodied in Alaska Rule of Criminal Procedure 47(b),[11] this court will not take notice of an error not brought to the attention of the trial court unless it affects a substantive right and is obviously prejudicial.[12] Not all errors of constitutional dimension must be examined in depth under this standard. *See Gilbert v. State*, 598 P.2d 87, 92 (Alaska 1979).

■ The state first argues that defense counsel's failure to object was a tactical decision, and that as a deliberate matter of trial strategy it constitutes an intelligent waiver of a known right by counsel. If there was such an intelligent waiver, the state argues, it cannot be plain error. In support of its position, the state relies on *Davis v. State*, 501 P.2d 1026, 1028–31 (Alaska 1972), and *Hammonds v. State*, 442 P.2d 39, 43 (Alaska 1968). The state notes that *Bargas v. State*, 489 P.2d 130 (Alaska 1971), is to the contrary, but distinguishes it on the ground that the lack of an objection by trial counsel in that case could not be attributed to any tactical or strategic decision.

We think that the state has correctly articulated the distinction between *Bargas* and the *Davis/Hammonds* line of cases, but, on the facts of this case, we must put it in the *Bargas* camp. In *Davis* the defendant deliberately injected exculpatory comments made during and after her arrest into the case and relied on them during closing argument. We held that the state's closing argument which emphasized the defendant's failure, at the time of arrest, to deny having committed the crime, constituted reasonable rebuttal. *Davis*, 501 P.2d at 1030. In *Hammonds*, the defendant failed to object to testimony concerning the exculpatory statements obtained in violation of her constitutional rights. We concluded that the defendant, for strategic reasons, had deliberately waived her rights in order to obtain the benefit of the testimony. *Hammonds*, 442 P.2d at 42.

Who? John Dorman did not ask the question because I submit to you based on the evidence, ladies and gentlemen, he knew who he killed and he didn't have to ask.
And I thank you for your attention.

10. In *Davis v. State*, 501 P.2d 1026, 1030–31 (Alaska 1972) (footnote omitted), this court stated:
There is considerable federal precedent to the effect that an inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested. [Citing *United States v. Nolan*, 416 F.2d 588, 593–94 (10th Cir. 1969); *Fowle v. United States*, 410 F.2d 48, 50–51 (9th Cir. 1969); *United States v. Mullings*, 364 F.2d 173, 175 (2d Cir. 1966)] Other precedent agreeing with this stance includes *Doyle v. Ohio*, 426 U.S. 610, 617–19, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91, 97–98 (1976);

*Miranda v. Arizona*, 384 U.S. 436, 468 n.37, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694, 720 n.37 (1966); *United States v. Shields*, 571 F.2d 1115, 1118 (9th Cir. 1978); *Coleman v. State*, 553 P.2d 40, 50 (Alaska 1976); *People v. Burress*, 183 Colo. 146, 515 P.2d 460, 464 (1973); *People v. Robles*, 183 Colo. 4, 514 P.2d 630, 631 (1973); *People v. Ortega*, 40 Colo.App. 449, 580 P.2d 813, 816 (1978).

11. Alaska R.Crim.P. 47(b) provides:
*Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

12. *Gilbert v. State*, 598 P.2d 87, 92 (Alaska 1979); *Burford v. State*, 515 P.2d 382, 383 (Alaska 1973).

In the instant case, defendant Dorman neither injected the issue of his silence into the case nor obtained a benefit from the prosecutor's inculpatory comment. There is no basis for the inference that defense counsel was trying to further Dorman's case by failing to object to the final argument comment, unless it is implied that defense counsel invited error for the purpose of obtaining a reversal on appeal. That conclusion, however, is not one which should be lightly inferred in any case, for it would preclude review of the most fundamental defects under the plain error doctrine; further, it is not supported by the record in this case because of the many objections made on other occasions by defense counsel to the use of Dorman's silence during interrogation.

Thus, since the failure to object to the final comment has not been shown to have been a tactical or strategic decision, the state's argument does not compel us to disregard the error.

We must still, of course, determine whether this remark constituted plain error. There is considerable authority to the effect that a prosecutor's comment on the silence of an accused during interrogation is reviewable without an objection having been made to the comment.[13] We have reached the same conclusion by implication in *Bargas v. State*, 489 P.2d 130, 133 (Alaska 1971) and *Padgett v. State*, 590 P.2d 432, 435 (Alaska 1979).[14] In *Bargas* the prosecutor introduced evidence of the defendant's re-

fusal to consent to a search and commented on it during closing argument. No objection was made by defense counsel. We held that the evidence and the argument were "obviously prejudicial" by analogy to cases prohibiting prosecutorial comment on the silence of an accused and, therefore, that the rule of plain error required review on appeal. 489 P.2d at 132–34.

■ *Padgett v. State* was another case in which the prosecutor introduced evidence concerning an accused's refusal to consent to a search and argued that it was evidence of guilt. Defense counsel made no objections. We held, in accordance with *Bargas*, that review of this conduct under the plain error rule was mandated. In so doing we expressed doubts concerning the effectiveness of an objection made during final argument:

A timely objection could have prevented the evidence from ever reaching the jury. However, an objection during final argument is not so effective. The prejudicial comment is before the jury before the objection can be made, and the curative effect of an admonition of the court to disregard the comment is of debatable value.

590 P.2d at 435 (footnote omitted). Even where a timely objection is made and sustained, a curative instruction may be insufficient to remove the prejudice caused by a guilt by silence argument in a close case such as this one.[15]

13. *See United States v. Meneses-Davila*, 580 F.2d 888, 891–95 (5th Cir. 1978); *United States v. Edwards*, 576 F.2d 1152, 1154 (5th Cir. 1978); *United States v. Henderson*, 565 F.2d 900, 904–05 (5th Cir. 1978); *United States v. Nolan*, 416 F.2d 588, 594 (10th Cir. 1969). *Accord, People v. Ortega*, 40 Colo.App. 449, 580 P.2d 813, 817 (1978); *Clenin v. State*, 573 P.2d 844, 846–47 (Wyo.1978). In Florida, such errors are regarded as per se reversible error. *Bennett v. State*, 316 So.2d 41, 42–44 (Fla.1975); *Dozier v. State*, 361 So.2d 727, 728 (Fla.App.1978). *See also Ramos v. Seidl*, 479 F.Supp. 771, 774–77, 778 n.9 (D.N.J.1979) (petition for habeas corpus).

14. *See also Hampton v. State*, 569 P.2d 138, 147 (Alaska 1977), *appeal dismissed*, 434 U.S. 1056, 98 S.Ct. 1225, 55 L.Ed.2d 757 (1978), where the trial judge merely asked: "The de-

fendant does not wish to take the stand?" This court held that the question constituted an obvious error affecting the substantial rights of the defendant which, therefore, required review under the plain error doctrine.

15. *United States v. Anderson*, 498 F.2d 1038, 1044–45 (D.C. Cir. 1974), *aff'd sub nom. United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Morgan v. Hall*, 569 F.2d 1161, 1165–68 (1st Cir. 1978); *People v. Galloway*, 100 Cal.App.3d 551, 160 Cal.Rptr. 914, 921 (Cal.App.1979).

In *Morgan* the court stated:

Other circuits, in ruling on the harmlessness of *Doyle* violations, have expressed serious reservations about the efficacy of curative instructions. Those cases that have held such errors to be harmless have emphasized

■ One other important factor in assessing the error here is the fact that the same issue had come up at another point in the trial, and had been dealt with unambiguously by the superior court. At one point, the prosecutor attempted to elicit testimony from another police officer who was present during the arrest and interrogation of Dorman concerning Dorman's responses to some questions and his failure to respond to others. The superior court stopped the examination, excused the jury and requested an explanation as to what the purpose of that line of questioning would be. Four times during this inquiry, defense counsel indicated that he objected to any use of Dorman's silence. The superior court explicitly stated no less than five times that the prosecutor could not comment on silence. Finally, the prosecutor stated that he would not comment on Dorman's silence.[16] Thereafter, the jury was recalled.

At another point defense counsel filed a written motion for a protective order preventing the prosecution from "the use or attempted use of cross-examination questions" directed at Dorman's silence or reactions during the custodial interrogation. The motion was granted. The prosecutor stated during the argument of this motion: "As I had indicated, Your Honor, at no time did I intend to or seek to directly comment upon Mr. Dorman's silence."

■ The prosecutor's statements as to his position and the superior court's unequivocal rulings both indicate that the last-minute injection of the final comment on Dorman's post-arrest silence constituted questionable advocacy. The plain error doctrine is specifically intended "to mitigate . . . the harsh effects of a rigid application of the adversary method of trial . . . ." *Bargas v. State*, 489 P.2d 130, 133 (Alaska

1971), *quoting* 8A J. Moore, *Federal Practice* ¶ 52.02[2], at 52–4 (2d ed. 1970). We must conclude that the prosecutor's comment was cognizable under the plain error rule.

■ Finally, the state contends that, in light of the many items of circumstantial evidence pointing to Dorman's guilt, the error was harmless beyond a reasonable doubt.[17] In our view the prosecutor's evidence was not overwhelming. Thus, considering the strength of the government's case, the obvious prejudice flowing from the remark, and the stage at trial at which the error occurred, we cannot conclude that the error was harmless beyond a reasonable doubt.

IV. Admission of Evidence of Prior Bad Acts and Comments on This Evidence in Closing Argument.

Although our conclusion as to the preceding point eliminates the necessity of addressing Dorman's other arguments, these same problems may be presented at a new trial, and we therefore discuss them. The victim's girlfriend, Mary Masidonski, testified at trial in general about Sutherland's cocaine business. She stated that she had delivered a gram of cocaine to Dorman on one occasion, and that on another occasion Dorman had come to the house and talked with Sutherland while she looked out the window, her usual duty when Sutherland was conducting a cocaine transaction. Dorman subsequently acknowledged that he used cocaine and had bought it from Sutherland for his personal use on several occasions. The prosecutor then cross-examined Dorman about the extent of his cocaine use, and then, in order to discredit Dorman's claim that he never "processed" cocaine,

---

not the presence or absence of curative instructions but the overwhelming evidence of guilt . . . . In no case has a prompt and forceful instruction alone been held sufficient to vitiate the use of post-arrest silence.
*Morgan v. Hall*, 569 F.2d at 1167–68 (citations and footnote omitted).

**16.** The prosecutor's exact statement was: "Well I . . . just for the record, Your Honor, I

have not so far stated I intend to rely upon silence as a point, and I don't."

**17.** This is the standard to be applied when the error alleged is of constitutional magnitude. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *Sidney v. State*, 571 P.2d 261, 263 (Alaska 1977).

introduced into evidence a photo of Dorman crushing and straining tablets of cocaine to granulate it into powder. In his closing argument, the prosecutor contended that the evidence suggested that Dorman was "not merely a casual purchaser." Later, in his rebuttal, the prosecutor referred to the "drug background" of the murder and the likelihood that the murder was a "drug killing" in reminding the jury that the body was left along a rather well-traveled road, with the victim's driver's license left in the clothing. Dorman contends that the above evidence was not relevant to any purpose that would justify its admission, and that the prosecutor's comments in any case went beyond what could be reasonably inferred from the evidence. We find no error either in admitting the evidence or in permitting the prosecutor's comments.

A. Admissibility of the Evidence.

■ At trial, Dorman made a general objection to the admission of any evidence regarding Sutherland's involvement in the drug business on the grounds of relevancy, but made no specific objections to Masidonski's testimony regarding cocaine sales to Dorman or the admission of the photograph. Since we conclude that no error was committed in admitting the evidence, we need not consider whether an adequate objection was made.

Alaska Rule of Evidence 404(b) prohibits admission of evidence of other bad acts for the purpose of discrediting the character of a person, but permits its use as evidence to prove motive and for other purposes.[18] Alaska Rule of Evidence 401 defines relevant evidence as that:

> having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Under this broad definition, testimony about illegal purchases of drugs from the victim in a characteristically violent business is relevant to show a possible motive for the murder. The introduction of the photograph of Dorman straining cocaine was likewise relevant to the proper purpose of discrediting his denial of "processing" cocaine and his claim that he used only small amounts of the drug.

■ Alaska Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Admission of evidence of drug use or other bad acts always carries with it the danger that the jury will resolve the issue of guilt or innocence on the basis of the low character or general propensity to commit crime it imputes to the accused, rather than on the basis of proof of the essential elements of the crime charged. *Gould v. State*, 579 P.2d 535, 538 (Alaska 1978). Where the evidence only illustrates a general propensity to commit crime to be inferred from the mere fact of drug use, its probative value is too slight to outweigh this prejudicial effect, and it should be excluded.[19]

■ The evidence here, however, supplies much more than an inference of general propensity towards crime. The testimony about drug transactions between Dorman and the victim establishes the crucial element of direct contact between the two in an illegal and violence-prone business; the photo indicates that Dorman possessed sufficient amounts of cocaine for him to have invested more than pocket cash in his purchase from the victim. We believe this supplies the "affirmative link" between the evidence and the crime charged which we have in the past required for evidence of

18. Alaska R.Evid. 404(b) provides:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

19. *Gould v. State*, 579 P.2d 535, 538–40 (Alaska 1978). *See also People v. Bartlett*, 64 Cal.Rptr. 503, 509 (Cal.App. 1967); *People v. Davis*, 43 Cal.Rptr. 357, 360 (Cal.App. 1965).

drug use by the accused to be admissible. *Id.* This case compares with *Gafford v. State*, 440 P.2d 405, 408 (Alaska 1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969), where we held that evidence which showed that ill will had resulted from drug dealings between the accused and the victim had sufficient probative value to outweigh its prejudicial effect. Our review of a trial court's decision to admit relevant evidence despite its prejudicial effect is a narrow one; the decision will not be reversed unless shown to be an abuse of discretion. *Ladd v. State*, 568 P.2d 960, 968 (Alaska 1977). We hold that the superior court did not abuse its discretion in admitting this evidence.

### B. Prosecutor's Comments.

■■■■ Dorman admits that defense counsel failed to object at trial to the statements made by the prosecutor during closing argument, so any impropriety in the closing arguments would have to rise to the level of "plain error" for us to reverse the superior court on this issue. We conclude that no such error occurred. The remarks need only be within the range of reasonable inference which could be drawn from the evidence to be permissible.[20] This court has in the past affirmed the decision of the trial court to permit a prosecutor's comments on the basis of a finding that the comments where neither "highly inflammatory" nor "calculated . . . to produce an improper conviction."[21] There is little if any basis to support a reversal here. The prosecutor's

references to the drug background of the killing were wholly warranted by the evidence regarding Sutherland's and Dorman's drug involvement. The characterization of Dorman as a more than casual purchaser of drugs was a reasonable inference to be drawn from the photograph showing him straining a quantity of cocaine as well as from his purchase of cocaine at Sutherland's house with Masidonski on lookout duty.

### V. Jury Instructions.

■■■ Dorman's final argument on appeal is that the following instruction misled the jury into applying the "preponderance of evidence" test rather than the "beyond a reasonable doubt" standard applicable in a criminal trial:

> If all the evidence, when taken as a whole and fairly and candidly weighed, convinces you beyond a reasonable doubt of the defendant's guilt, a verdict of guilty should be returned; otherwise the defendant should be acquitted.

> When all the evidence considered by you and taken as a whole *points equally to the defendant's innocence as well as to his guilt*, you must give the defendant the benefit of the doubt and find him not guilty. [emphasis added]

We reject this argument. First, defense counsel failed to properly object at trial to the instruction, as is required by Criminal Rule 30(a).[22] Furthermore, when read in

---

**20.** *Gafford v. State*, 440 P.2d 405, 414 (Alaska 1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969); *see Bentley v. State*, 393 P.2d 225, 230 (Alaska 1964); *Anderson v. State*, 384 P.2d 669, 674 (Alaska 1963).

**21.** *See Webb v. State*, 580 P.2d 295, 302 (Alaska 1978); *accord, Isaacs v. United States*, 301 F.2d 706, 737 (8th Cir. 1962); *Garroutte v. State*, 508 P.2d 1190, 1191 (Alaska 1973).

**22.** Alaska R.Crim.P. 30(a) reads in pertinent part:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections.

When the trial judge asked if counsel took exception to any of the chosen instructions, defense counsel stated that he felt the circumstantial evidence instruction he had copied from a current California instruction was "preferable," but agreed that the instruction chosen by the court "undoubtedly" presented the current law of Alaska correctly. The instruction proposed by defense counsel read:

Also, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence and reject that interpretation which points to his guilt.

If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other to be unreasonable, it

conjunction with the other instructions given to the jury that explained the meaning of reasonable doubt in detail,[23] we do not think the language in the instruction above was sufficiently misleading to constitute "plain error" which would warrant reversal.[24]

The judgment of the superior court is REVERSED.

[footnotes]

would be your duty to accept the reasonable interpretation and to reject the unreasonable. This instruction suffers the same defect Dorman ascribes to that given to the jury—there is no statement that a verdict of innocent is appropriate even where an interpretation points more to guilt than to innocence, if a reasonable doubt remains about guilt. Thus, we conclude defense counsel did not meet his responsibility of making the judge clearly aware of any alleged errors in time to correct the charge before it was submitted to the jury. *Cf. Brown v. Estate of Jonz*, 591 P.2d 532, 534 (Alaska 1979) (failure to object at all prior to end of trial held inadequate); *Saxton v. Harris*, 395 P.2d 71, 73 (Alaska 1964) (a general objection to a failure to give certain of defendant's proposed instructions, without specifying reasons, held not to satisfy requirements of equivalent civil rule).

**23.** The other instructions on reasonable doubt given to the jury read:

Doubt is that attitude of mind which questions the acceptance of or belief in a proposition or theory. A reasonable doubt is a fair doubt based upon reason and common sense which arises from the state of the evidence. It is rarely possible to prove anything to an absolute certainty. Proof beyond a reasonable doubt is established if the evidence is such as you as a prudent person would be willing to rely and act upon without hesitation or question in the most important of your own affairs.

A defendant is not to be convicted on mere suspicion or conjecture. A reasonable doubt

may arise not only from the evidence produced, but also from a lack of evidence. Since the burden is upon the state to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon the failure of the state to establish such proof. The law does not impose upon a defendant the duty of producing any evidence except if he has stated an affirmative defense under the law.

This court expressed its preference for instructions such as these in *Rivett v. State*, 578 P.2d 946, 949–50 (Alaska 1978), following *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150, 167 (1954).

**24.** *Cf. United States v. Marcus*, 401 F.2d 563, 567 (2d Cir. 1968), *cert. denied*, 393 U.S. 1023, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969), where an instruction similar to that in the case at bar was held not to be plain error. A previous decision of the Second Circuit disapproved of a similar instruction where it appeared near the end of the charge to the jury and contained the words "in the final analysis," despite correct instructions on reasonable doubt having been given earlier in the charge as here. *United States v. Hughes*, 389 F.2d 535, 537 (2d Cir. 1968). In *Hughes* the case was remanded for a new trial on the basis of prosecutorial misconduct in closing argument as well as the defect in the instruction, however.