**Michele A. GREINIER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A-7441.**

Court of Appeals of Alaska.

Feb. 16, 2001.

---

Roger D. Snippen, Juneau, for Appellant.

Marcelle K. McDannel, Assistant Attorney General, Office of Special Prosecutions, and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Michele A. Greinier was romantically involved with Robert Harris. On September 16, 1998, Harris broke the arm of their six-month-old daughter, Sierra. Greinier took the baby to the hospital, but she lied to medical personnel, and later the police, about

how the injury occurred. Greinier told them that her other child, a three-year-old, was playing with Sierra and had caused the injury to the baby's arm.

Based on these lies, Greinier was convicted of hindering prosecution in the first-degree.[1] The State's theory was that Harris had committed a felony assault on Sierra and that Greinier, through her deception, had obstructed the discovery and investigation of that assault. Following a jury trial, Greinier was convicted of this crime.

*Sufficiency of the evidence*

Greinier argues that the evidence was insufficient to support her conviction. Under AS 11.56.770(a)(1), a defendant commits the crime of first-degree hindering prosecution if the defendant "renders assistance to a person who has committed a crime punishable as a felony" and if the defendant renders that assistance "with intent to hinder the apprehension, prosecution, conviction, or punishment of that person".

Greinier concedes that her lies about how Sierra was injured could constitute "assistance" for purposes of the statute.[2] However, she argues that the State presented insufficient evidence that Harris committed a felony assault on Sierra. Alternatively, Greinier argues that even if Harris did commit a felony assault, the State failed to prove that Greinier's lies about the cause of Sierra's injury were motivated by an intent to hinder Harris's prosecution or punishment for this assault.

### (a) The State's proof that Harris committed a felony assault on the baby

■ To establish that Harris committed a felony assault on Sierra, the State had to prove that Harris intentionally or recklessly inflicted serious physical injury on the child, or that Harris recklessly caused physical injury to the child and this injury reasonably required medical treatment.[3] At trial, Greinier testified that Sierra's injury occurred while Greinier was talking on the telephone, watching Harris and the baby from a few feet away. According to Greinier, Harris was putting Sierra down for a nap. Greinier declared that Sierra's arm was broken unexpectedly when Harris rolled the baby over. Based on this testimony, Greinier argues that there was insufficient evidence to support the conclusion that Greinier knew or was aware of a substantial probability[4] that Harris had committed a felony-level assault on Sierra.

But Greinier's argument hinges on viewing the evidence in a light favorable to herself. We must view the evidence in the light most favorable to upholding the jury's verdict.[5] Sierra sustained a spiral fracture of her arm. The State presented evidence that such an injury is rare in children and generally occurs when the arm is twisted with great force. Viewing the medical testimony in the light most favorable to the State, it is unlikely that such a fracture would result from turning a baby over. Babies' arms are pliable, able to withstand considerable force, and thus the baby would normally flip over before its arm would break. To inflict such an injury, one would normally have to grab the baby's forearm and twist with great force.

When this evidence is viewed in the light most favorable to upholding the verdict, reasonable jurors could conclude that Greinier was not truthful when she described how Sierra's arm was broken. The jurors could reasonably conclude that Greinier knew that Harris had intentionally or recklessly injured the child.

### (b) Greinier's argument that she could not be convicted absent proof that Harris was convicted of felony assault on the baby

■ Greinier also argues that even if the evidence was theoretically sufficient to prove

---

1. AS 11.56.770(a).

2. *See* AS 11.56.770(b)(4).

3. *See* AS 11.41.200(a)(2), AS 11.41.210(a)(2), and AS 11.41.220(a)(1)(C)(i).

4. *See* AS 11.81.900(a)(2), the definition of "knowingly".

5. *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981); *Silvernail v. State*, 777 P.2d 1169, 1172 (Alaska App.1989).

that Harris committed a felony assault on Sierra, the fact remains that Harris was never convicted of a felony for his conduct. Although Harris was initially charged with felony assault, he ultimately was convicted of misdemeanor assault (fourth-degree assault) under a plea agreement with the State. Greinier argues that a defendant can not lawfully be convicted of first-degree hindering prosecution unless the person who received the defendant's assistance is *convicted* of a felony. Because no felony judgement was ever entered against Harris, Greinier contends that she could not legally be convicted of first-degree hindering prosecution even if the State presented sufficient evidence to establish Harris's guilt of felony assault.

■ The language of the first-degree hindering statute does not support Greinier's argument. Under AS 11.56.770(a), the State must prove that the defendant rendered assistance "to a person who has committed a crime punishable as a felony". The legislature's use of the word "punish*able*" indicates that the legislature did not intend to require proof that the person who committed the underlying felony was actually prosecuted and convicted of the offense.

Indeed, the legislative commentary to this statute contemplates that people who render aid to felons can be prosecuted for hindering prosecution even when the person who committed the underlying felony successfully evades justice. In its commentary, the legislature declared that the level of a defendant's guilt (for either first-degree or second-degree hindering) will depend on "the class of crime committed by the *fugitive*".[6]

Finally, Greinier's interpretation of the hindering prosecution statute conflicts with one of the rules governing vicarious criminal responsibility—the rules that define when a person can be prosecuted for a crime based on someone else's conduct. AS 11.16.120(a)(2)(A) declares that when a defendant is prosecuted "for an offense in which legal accountability is based on the conduct of another person",

it is not a defense that ... the other person has not been prosecuted for or convicted of an offense based on the conduct in·question[,] or has been convicted of a different offense or [a different] degree of offense.

Thus, even though Harris was convicted of only misdemeanor assault, Greinier could lawfully be convicted of felony-level hindering prosecution under AS 11.56.770(a) if the State established that Harris was in fact guilty of "a crime punishable as a felony".

*(c) Greinier's argument that, even though she lied about how her baby was injured, her intent was not to hide the assault on the child, but rather to hide the fact that Harris was present at her house in violation of his bail conditions*

■ Two months before the assault on Greinier's baby daughter, Harris committed an assault on Greinier herself. When Greinier's six-year-old son intervened in an attempt to protect his mother, Harris assaulted the boy too. Harris was arrested for these assaults and was jailed pending trial.

Several weeks later, on September 11, 2000, Greinier borrowed $1500 and helped to bail Harris out of jail. One of Harris's conditions of release forbade him from having any contact with Greinier. Greinier understood this, but she nevertheless welcomed Harris back into her home. Five days later, Harris assaulted the baby.

Greinier contends that when she lied to the hospital personnel and the police about how Sierra was injured, her motivation was to prevent the police from finding out that Harris had violated the terms of his bail release by moving back in with Greinier-for if this became known, Harris would be sent back to jail and Greinier might lose the $1500 bail money. Greinier argues that if this was her motivation for lying, she could not be guilty of hindering prosecution, for the offense of hindering prosecution required the State to prove that Greinier lied "with intent to hinder [Harris's] apprehension, prosecution, conviction, or punishment" for a criminal offense.

Greinier's argument is premised on the underlying contention that the State was

---

**6.** 1978 Senate Journal, Supp. No. 47 (June 12), p. 86 (emphasis added).

obliged to prove that she acted with a single identifiable intent. But under AS 11.81.900(a)(1), "when intentionally causing a particular result is an element of an offense, that intent need not be the [defendant's] only objective". Thus, even if the jury believed that Greinier lied to prevent the revocation of Harris's bail release and the forfeiture of her $1500, the jury could still lawfully convict Greinier of hindering prosecution if they concluded that Greinier was *also* motivated by an intent to hinder Harris's apprehension, prosecution, conviction, or punishment for the assault on the baby.

As we explained above, the evidence was sufficient to prove that Harris committed a felony assault on Sierra and that Greinier knew this. This same evidence was likewise sufficient to support the conclusion that Greinier lied to the hospital personnel and the police in an effort to conceal Harris's commission of this assault.

### Greinier's due process argument

 Greinier's final argument on appeal is that the State violated her right to due process of law when it indicted her for hindering prosecution. Greinier contends that her situation is analogous to the legal conundrum faced by the defendants in *Gudmundson v. State.*[7]

The defendants in *Gudmundson* were hunters who killed a sheep in an area that was closed to hunting. They then faced the following dilemma: if they left the sheep where it was and returned home, they would be guilty of wanton waste of game; but if they retrieved the sheep and brought it back with them, they would be guilty of transporting illegally-taken game.[8] In other words, no matter what course of action the defendants pursued, they would commit another crime. The supreme court ruled that, under these circumstances, the defendants' right to substantive due process was violated when the State charged them with wanton waste.[9]

Greinier asserts that she faced the same unsolvable dilemma. She notes that she invited Harris to come live with her in violation of the conditions of his bail release. When Harris returned to live with Greinier in violation of his bail condition, he committed the crime of first-degree unlawful contact.[10] Harris then assaulted Greinier's child. If Greinier accurately reported how the baby's injury occurred, she would divulge information (Harris's invited presence in her house) that the State might later use to charge her as an accomplice to Harris's crime of unlawful contact. And if Greinier lied about how the injury occurred, she could be charged with hindering prosecution.

But this is not the same dilemma faced by the defendants in *Gudmundson.* The essential problem in *Gudmundson* was that, no matter how the hunters reacted to the situation, they would inevitably commit a *new* crime in addition to their already-completed crime of illegal hunting. Greinier did not face this problem. True, if she told the truth about how her baby came to be injured, her statements could conceivably be used to prove her complicity in a *previous* crime (Harris's return to her home).[11] But Greinier would not commit a *new* crime by truthfully explaining how her baby was injured, or by declining to explain how the injury occurred. She would commit a new crime only if she lied (and if she acted with the knowledge and intent required by the hindering prosecution statute).[12] We therefore conclude that Greinier's indictment and conviction for hindering prosecution did not violate her right to substantive due process.

### Conclusion

The judgement of the superior court is AFFIRMED.

**7.** 822 P.2d 1328 (Alaska 1991).

**8.** *See* AS 16.30.010(a) (wanton waste of game) *and* 5 AAC 92.140 (transportation of illegally-taken game).

**9.** *Gudmundson,* 822 P.2d at 1333.

**10.** AS 11.56.750(a)(1)(B)(i).

**11.** *But see* AS 11.16.120(b)(1).

**12.** At the time of the events in this case, the offense of "failure to report a violent crime committed against a child", AS 11.56.765, had been enacted but had not taken effect.